# EXHIBIT C

```
 1              COMMONWEALTH OF MASSACHUSETTS
 2              UNITED STATES DISTRICT COURT
 3    Volume II              Rule 30 Deposition
      Pages 151-254
 4
 5         RI SEEKONK HOLDINGS, LLC
 6                    vs.
 7         TIMOTHY P. MCINERNEY, ET AL
 8
 9         CONTINUED DEPOSITION OF STEVEN S. HOWITT,
10    taken in behalf of the plaintiff, pursuant to the
11    applicable provisions of the Massachusetts Rules of
12    Civil Procedure, before Melissa Prodanis, Court
13    Reporter and Notary Public in and for the
14    Commonwealth of Massachusetts, at the Offices of
15    GOUDREAU & GROSSI COURT REPORTING SERVICE, INC., 63
16    Winthrop Street, Taunton, Massachusetts, on
17    Wednesday, February 27, 2006, commencing at 12:34
18    p.m.
19
20                    * * * * *
21
22
23
24
```

|    |   |                                                                        |
|----|---|------------------------------------------------------------------------|
| 1  |   | whatever, they're taxpayers, if they want to                           |
| 2  |   | speak to board members, that's fine. So, that                          |
| 3  |   | memo went out. I believe Dana took over. There                         |
| 4  |   | was a new blood so to speak. I think John                              |
| 5  |   | Whelan and Chris Pelletier were the new members                        |
| 6  |   | at that point and Dana seemed to get along                             |
| 7  |   | pretty well with Tim. But then when Dana was                           |
| 8  |   | off and Doreen started, you know, it changed.                          |
| 9  |   | There seemed to be a very big pole between                             |
| 10 |   | who had what power, whether the Administrator                          |
| 11 |   | had the power or the Board had the power. And                          |
| 12 |   | there was always conflict that when we would ask                       |
| 13 |   | for something and especially with the Police                           |
| 14 |   | Chief, he would always stonewall us because he                         |
| 15 |   | was protecting him.                                                    |
| 16 | Q | Ultimately, as I understand it, the Town changed                       |
| 17 |   | its own town counsel?                                                  |
| 18 | A | Yes, because we felt that it wasn't representing                       |
| 19 |   | on the Board as much as it was representing Tim.                       |
| 20 |   | We wanted to have someone who understood that                          |
| 21 |   | they worked for the Board of Selectmen which is                        |
| 22 |   | basically in the charter that the town counsel                         |
| 23 |   | is at the behest of the Board. We felt we need                         |
| 24 |   | protection for the Board when Tim would tell us                        |

1  something and then, you know, we would find out
2  it would be different.  So, there was a lack of
3  trust and then that developed into we wanted to
4  protect ourselves and make sure what he was
5  telling us was correct.
6  Q  Were there other -- let me rephrase that.  In
7     your answer, you talked about Mr. McInerney
8     telling you something and then you found out
9     that it was different.  I believe you were
10    giving us an example earlier about the right to
11    vote on terminating the Chief?
12 A  Correct or not -- his re-appointment.
13 Q  His re-appointment.  Were there other instances
14    when this happened?
15 A  We believe that there were.  I don't know
16    specifics.  I'd have to review my notes but
17    basically the trust had been lost.  And once
18    that was lost, it's very hard to bring back and
19    there were other instances especially when we
20    were dealing with Tim and we were negotiating
21    his release of his contract, you know, he would
22    come back and say, well, you can't discuss this
23    in executive session or I'm not going to do
24    that.

1  And then there was actually, you know, an
2  instance where he walked out on a Board meeting
3  because he was upset. We reprimanded him for
4  that. We went round and round with him. He
5  would cite this law and say you can't do this
6  and you can't do that. But he actually was
7  pissed off and he walked out in the middle of a
8  Board meeting because we were allowing someone
9  their right to speak and question their dealings
10 with him.
11 Q  And was it your opinion that the former town
12    counsel, Mr. Lehane and his office was giving
13    advice to Mr. McInerney that was at odds with
14    what you --
15 A  We just felt we wanted someone that would be
16    looking in terms of the Board's interests, that
17    town counsel had been there prior for a number
18    of years and we wanted counsel who would say,
19    you know, if there was an issue, they would
20    contact the Board or we just felt we wanted
21    someone who we hired and that they knew
22    specifically that they were hired by the Board
23    of Selectmen and that's who their "master" is,
24    not the Town Administrator.

```
 1  Q    Did you then feel that Mr. Lehane and his firm
 2       thought that the master was the Town
 3       Administrator?
 4  A    I would say yes.
 5  Q    Okay.
 6  A    Or the employer.  Master's not a good phrase,
 7       not politically correct.
 8  Q    I'm using this, just following the words that
 9       you had used, not trying to give them any
10       unusual cConaty?
11  A    Right.  I'm not either.  I couldn't think of the
12       word, you know.  Sometimes it slips.
13  Q    All right.  Now, let's look at, having looked at
14       Exhibit 6, we'll get back to number 7.
15  A    Okay.
16  Q    And here, as you can see, Mr. McInerney is
17       acknowledging a telephone message.  The second
18       page of this is a copy of an envelope which is
19       postmarked on June 3rd which would be the day
20       after Mr. Tapalian's letter --
21  A    Okay.
22  Q    -- we saw in Exhibit 6.  But, in any event, he
23       indicates in the second paragraph, "Please be
24       advised that any questions, concerns or items
```